*Williams Grand Prix Engineering Limited*

*v.*

*Rokit Marketing, Inc. and Rok Marketing LLC*

# EXHIBIT "C"

**To Petition to Confirm Foreign Award**

**(9 USC § 207)**



AWARD 裁决 قرار التحكيم

LAUDO ARBITRAL

SENTENCE ARBITRALE

АРБИТРАЖНОЕ РЕШЕНИЕ

LCIA
Arbitration and ADR worldwide

Arbitration No: 204960

www.lcia.org

The London Court of International Arbitration

**LCIA ARBITRATION CASE No. 204960**

IN THE MATTER OF AN ARBITRATION UNDER THE RULES OF ARBITRATION OF THE LONDON COURT OF INTERNATIONAL ARBITRATION (2020)

BETWEEN:

**WILLIAMS GRAND PRIX ENGINEERING LIMITED**

*Claimant*

-and-

**(1) ROKIT MARKETING INC.**

**(2) ROK MARKETING LLC.**

*Respondents*

("the Parties")

**Final Award
of
19 October 2021**

Sole Arbitrator

Klaus Reichert SC

London Court of International Arbitration
Certified true copy of original

WING SHEK
LCIA Deputy Registrar
Date 18 NOVEMBER 2021

1. **INTRODUCTION**

1.1   This Final Award resolves, finally, the Claimant's remaining prayer for relief as sought in this arbitration as against the Respondents, namely, costs. For the reasons set out below, the Claimant is successful against the Respondents.

1.2   At the outset the Sole Arbitrator recalls the Partial Final Award rendered herein on 29 July 2021 ("the Second Partial Final Award") which held as follows in its dispositive part:

> *For the reasons set out above, the Sole Arbitrator holds, finds, grants and determines by way of Partial Final Award:*
>
> *(a) A declaration that the First Instalment [GBP 5,000,000.00] and Second Instalment [GBP 5,000,000.00] under the First Agreement are due and owing from ROKIT MARKETING INC to WILLIAMS GRAND PRIX ENGINEERING LIMITED;*
>
> *(b) A declaration that the monies invoiced under the Fanatics [GBP 21,660.00] and Show Car Invoices [GBP 30,834.00] are due and owing from ROKIT MARKETING INC to WILLIAMS GRAND PRIX ENGINEERING LIMITED;*
>
> *(c) An award that ROKIT MARKETING INC immediately pays to WILLIAMS GRAND PRIX ENGINEERING LIMITED a sum equal to the First Instalment [GBP 5,000,000.00] and Second Instalment [GBP 5,000,000.00] under the First Agreement, and the Fanatics [GBP 21,660.00] and Show Car Invoices [GBP 30,834.00];*
>
> *(d) An award of damages to be paid by ROKIT MARKETING INC to WILLIAMS GRAND PRIX ENGINEERING LIMITED in a sum equal to the Third Instalment [GBP 3,500,000.00] under the First Agreement;*
>
> *(e) An award that ROKIT MARKETING INC pays the Additional Payment [USD 1,000,000.00] in accordance with the Oral Agreement;*
>
> *(f) An award compensating WILLIAMS GRAND PRIX ENGINEERING LIMITED for all other loss and damage suffered by it, which was occasioned by ROKIT MARKETING INC's breaches of the First Agreement, in the sum of GBP 126,837.00;*
>
> *(g) An award that ROKIT MARKETING INC pays interest in the amount of GBP 693,443.84 pursuant to clause 3.2 of the First Agreement;*

> (h) *A declaration that the First Instalment [GBP 4,000,000.00] and Second Instalment [GBP 4,000,000.00] under the Second Agreement are due and owing from ROK MARKETING LLC. to WILLIAMS GRAND PRIX ENGINEERING LIMITED;*
>
> (i) *An award that ROK MARKETING LLC. immediately pays to WILLIAMS GRAND PRIX ENGINEERING LIMITED a sum equal to the First Instalment [GBP 4,000,000.00] and Second Instalment [GBP 4,000,000.00] under the Second Agreement;*
>
> (j) *An award of damages to be paid by ROK MARKETING LLC. to WILLIAMS GRAND PRIX ENGINEERING LIMITED in a sum equal to the Third Instalment [GBP 3,000,000.00] under the Second Agreement; and*
>
> (k) *An award that ROK MARKETING LLC. pays interest in the amount of GBP 562,887.67 pursuant to clause 3.2 of the Second Agreement.*

1.3   Following the Second Partial Final Award:

   (a)   The Claimant filed its costs submissions on 16 August 2021. On that date the Sole Arbitrator sent an email to the Parties inviting the Respondents to indicate whether they would be filing claims for costs and, in the event that were is no such indication by 5pm London time on Thursday, 19 August 2021, he would proceed on the assumption that no such claims are being made. The Respondents made no such indication by that deadline. The Respondents did not file any costs submissions.

   (b)   On 24 August 2021, by email sent to the Parties, the Sole Arbitrator afforded an opportunity to the Respondents to comment on the Claimant's costs submissions by 5pm London time on 28 August 2021. No comments were made by the Respondents by that deadline.

2.   **PRAYERS FOR RELIEF**

2.1   The Sole Arbitrator now records the Claimant's prayers for relief as sought in the Statement of Case (emphasis added for the purposes of this Final Award):

   ***Relief sought under the First Agreement***

*14.2 Under the First Agreement and the Oral Agreement and against Respondent 1, the Claimant is entitled to and claims:*

*(a) A declaration that the First Instalment and Second Instalment under the First Agreement are due and owing from Respondent 1 to the Claimant;*

*(b) Additionally, a declaration that the monies invoiced under the Fanatics and Show Car Invoices are due and owing from Respondent 1 to the Claimant;*

*(c) Additionally, an award that Respondent 1 immediately pays to the Claimant a sum equal to the First Instalment and Second Instalment under the First Agreement, and the Fanatics and Show Car Invoices;*

*(d) Additionally, an award of damages in a sum equal to the Third Instalment under the First Agreement;*

*(e) Additionally, an award that Respondent 1 pays the Additional Payment in accordance with the Oral Agreement;*

*(f) Additionally, an award compensating the Claimant for all other loss and damage suffered by the Claimant, which was occasioned by Respondent 1's breaches of the First Agreement, in the sum of £126,837 or such other amount as determined by the Tribunal;*

*(g) Additionally, an award that Respondent 1 pays such interest as is owing at the date of the award, pursuant to clause 3.2 of the First Agreement;*

***(h) Additionally, a declaration that Respondents jointly and severally pay the costs of this arbitration (to be assessed, if not agreed), including all expenses that the Claimant has incurred or shall incur in respect of the fees and expenses of the arbitrators, the LCIA Court, legal counsel, experts and consultants as well as its own internal costs, any other expenses incurred in connection with this arbitration or any other costs order as the arbitral tribunal decides, and an award requiring them to do so within 14 days of any judgment in these arbitral***
***proceedings****; and*

*(i) Any other such award, order or further relief as the Tribunal may deem appropriate.*

**Relief sought under the Second Agreement**

*14.3 Under the Second Agreement and against Respondent 2, the Claimant is entitled to and claims:*

*(a) A declaration that the First Instalment and Second Instalment under the Second Agreement are due and owing from Respondent 2 to the Claimant;*

(b) *Additionally, an award that Respondent 2 immediately pays to the Claimant a sum equal to the First Instalment and Second Instalment under the Second Agreement;*

(c) *Additionally, an Award of damages in a sum equal to the Third Instalment under the Second Agreement;*

(d) *Additionally, an award that Respondent 2 pays such interest as is owing at the date of the award, pursuant to clause 3.2 of the Second Agreement;*

(e) **<u>*Additionally, a declaration that the Respondents jointly and severally pay the costs of this arbitration (to be assessed, if not agreed), including all expenses that the Claimant has incurred or shall incur in respect of the fees and expenses of the arbitrators, the LCIA Court, legal counsel, experts and consultants as well as its own internal costs, any other expenses incurred in connection with this arbitration or any other costs order as the arbitral tribunal decides, and an award requiring them to do so within 14 days of any judgment in these arbitral proceedings*</u>**; and

(f) *Any other such award, order or further relief to the Claimant as the Tribunal may deem appropriate.*

3.  **ANALYSIS**

3.1   The appropriate starting point is the provision in the LCIA Rules concerning costs. This is as follows:

> ***Article 28    Arbitration Costs and Legal Costs***
>
> *28.1   The costs of the arbitration other than the legal or other expenses incurred by the parties themselves (the "Arbitration Costs") shall be determined by the LCIA Court in accordance with the Schedule of Costs. The parties shall be jointly and severally liable to the LCIA and the Arbitral Tribunal for such Arbitration Costs.*
>
> *28.2   The Arbitral Tribunal shall specify by an order or award the amount of the Arbitration Costs determined by the LCIA Court. The Arbitral Tribunal shall decide the proportions in which the parties shall bear such Arbitration Costs (in the absence of a final settlement of the parties' dispute regarding liability for such costs). If the Arbitral Tribunal has decided that all or any part of the Arbitration Costs shall be borne by a party other than a party which has already covered such costs by way of a payment to the LCIA under Article 24, the latter party shall have the right to recover the appropriate amount of Arbitration Costs from the former party.*

*28.3 The Arbitral Tribunal shall also have the power to decide by an order or award that all or part of the legal or other expenses incurred by a party (the "Legal Costs") be paid by another party. The Arbitral Tribunal shall decide the amount of such Legal Costs on such reasonable basis as it thinks appropriate. The Arbitral Tribunal shall not be required to apply the rates or procedures for assessing such costs practised by any state court or other legal authority.*

*28.4 The Arbitral Tribunal shall make its decisions on both Arbitration Costs and Legal Costs on the general principle that costs should reflect the parties' relative success and failure in the award or arbitration or under different issues, except where it appears to the Arbitral Tribunal that in the circumstances the application of such a general principle would be inappropriate under the Arbitration Agreement or otherwise. The Arbitral Tribunal may also take into account the conduct of the parties and that of their authorised representatives in the arbitration, including any cooperation in facilitating the proceedings as to time and cost and any non-cooperation resulting in undue delay and unnecessary expense. Any decision on costs by the Arbitral Tribunal shall be made with reasons in the order or award containing such decision (unless it is a Consent Award).*

*28.5 In the event that the parties have howsoever agreed before their dispute that one or more parties shall pay the whole or any part of the Arbitration Costs or Legal Costs whatever the result of any dispute, arbitration or award, such agreement (in order to be effective) shall be confirmed by the parties in writing after the Commencement Date.*

*28.6 If the arbitration is abandoned, suspended, withdrawn or concluded, by agreement or otherwise, before the final award is made, the parties shall remain jointly and severally liable to pay to the LCIA and the Arbitral Tribunal the Arbitration Costs determined by the LCIA Court.*

3.2 The next point which the Sole Arbitrator considers appropriate to record is the following extract from the Claimant's costs submissions:

*28. On 19 June 2020, C's solicitors wrote to Rs making a "Without Prejudice Save as to Costs" offer (a Calderbank offer in English law parlance) (the "First WPSATC Offer") (CCB Tab 7 pages 31-32) stating:*

*"... Without prejudice to the above, whilst Williams has an indisputable right to the aforementioned sums, Williams has carefully considered the sum that it would be willing to accept to bring this dispute to a close without resorting to legal proceedings. 1.7 Our client is willing to accept the following terms of settlement, subject to a suitably worded and agreed settlement deed: 1.7.1 ROKiT pays the sum of £13,500,000 comprising the First Instalment, Second Instalment and Third Instalment, payment to be made within 14 days of the execution of a settlement deed; 1.7.2 ROK pays the sum of £11,000,000 comprising the First Instalment, Second Instalment and Third Instalment, payment to be made within 14 days of the execution of a settlement deed; 1.7.3 Williams would refund any amounts that it secures by way of Replacement Sponsors in respect of the 2020 season (in accordance with clause 6.2(c) of the*

*Agreements); 1.7.4 Williams would not pursue ROKiT for the Additional Payment of US$1,000,000; 1.7.5 Williams would not pursue the legal costs incurred; 1.7.6 Williams would not pursue the costs of rectification and reversal incurred; and 1.7.7 Williams would not pursue the Fees for the remaining duration of the Agreements. 1.8 This offer remains open for acceptance until Friday 26 June 2020. This communication is without prejudice and confidential, save on the issue of costs where it may be brought to the attention of a tribunal..."*

*29. No response was received to the First WPSATC Offer.*

*30. On 30 June 2020, C's solicitors wrote again to Rs' counsel following a lack of response to the First WPSATC Offer and noting that certain announcements that Rs' Group was looking to enter into a sponsorship deal with Mercedes F1 (and objecting to that).*

*31. Rs responded by way of an e-mail dated 01 July 2020 ("Rs' Response") which stated that: "... Your client is proposing that we pay £13,500,000, for what? We look forward to receiving confirmation once you have commenced arbitral proceedings...".*

*32. Notwithstanding C's prompt response on 03 July 2020, the aforesaid email was the extent of the Rs' attempts to enter into settlement negotiations and should, in C's submission, inform the Tribunal's exercise of his discretion to award C all of its costs incurred.*

*33. The Second Award in fact has shown that the First WPSATC was an exceptionally generous offer (and should have been accepted by Rs).*

*34. The Second Award, at paragraph 5.1, shows that C was successful not only in relation to its debt claims under the Agreements, but also regarding: a. The additional $ 1,000,000 claim for payment under the "Oral Agreement"; b. Other losses and damage to C in the sum of £ 126,837; c. An interest payment under the First Agreement of £ 693,443.84; and d. An interest payment under the Second Agreement of £ 562,887.67.*

3.3   What is immediately apparent from the foregoing quotation from the Claimant's costs submissions is that it is entirely correct that the "First WPSATC" offer was indeed generous and had the Respondents accepted it they would have been in a far better legal position than as a result of the Second Partial Final Award. Put another way, the Respondents' approach in refusing the Claimant's "Calderbank" offer, using the local English civil litigation shorthand term, has resulted in an arbitration which was defended by them to put themselves into a worse legal position.

3.4   Quite apart from the factor discussed in the foregoing paragraph, there is also the basic fact that the Claimant has won all its claims in this arbitration. The LCIA Rules, as quoted above, contain the <u>general principle that costs should reflect the parties'</u>

*relative success and failure in the award or arbitration*.

3.5  The Sole Arbitrator considers that there is no reason to depart or attenuate the aforementioned "general principle", particularly in light of: (a) the Claimant's success in all of its claims; and (b) the generous "Calderbank" letter sent at an early point in the dispute by the Claimants could have avoided all of the legal expenses now being sought, but was turned down in peremptory terms. Thus, the Sole Arbitrator finds and holds that the Respondents bear responsibility for the Claimant's costs. The question then becomes: how much?

3.6  The Claimant's quantum of claimed costs is as follows. First, a total of GBP 219,305.50 comprising the time costs of CRS. Secondly, a total of GBP 13,040.00 comprising the fees of Counsel. Finally, GBP 915.00 comprising certain outlay. The sums paid by the Claimant to the LCIA are dealt with separately below. The Partner of CRS in charge of the case for the Claimant has confirmed, by his signature, that these amounts were incurred. The Sole Arbitrator finds, therefore, that these amounts are duly proven and comprise the "Legal Costs" of the Claimant as understood by the LCIA Rules (as quoted above).

3.7  Taking into account the matters described at para. 3.5 above, the Sole Arbitrator considers that all of the Claimant's Legal Costs (*i.e.* GBP 233,260.50 which is the total of the amounts set out just above) should be borne by the Respondents. The Legal Costs are modest and no discount should be applied.

3.8  Turning to the "Arbitration Costs" as understood by the LCIA Rules, the net costs of the Arbitration (other than the legal or other costs incurred by the parties themselves) have been determined by the LCIA Court, pursuant to Article 28.1 of the LCIA Rules, to be as follows:

| | |
|---|---|
| Registration Fees: | GBP 3,900.00 |
| LCIA's administrative charges: | GBP 10,732.87 |
| Tribunal fees and expenses: | GBP 18,166.66 |
| Total net cost of the Arbitration: | GBP 32,799.53 |

These fees and expenses are subject to the appropriate VAT.

Towards these costs, the Claimant has paid GBP 54,680.00 which includes the registration fee and advances lodged, and the Respondents have paid GBP 10,000.00,

which includes advances lodged. A total, therefore, of GBP 64,680.00 has been received from the Parties, of which GBP 32,799.53 plus VAT of GBP 3,669.96 has been used towards the costs of the Arbitration. The balance of funds, being GBP 28,210.51 will be returned to the Parties in the proportions they were paid. This means that the Claimant will receive GBP 23,508.76 from the LCIA. This further means that the Claimant will be out of pocket in the net amount of GBP 31,171.24 (being the difference between the amount advanced by it to the LCIA and the amount it will receive by way of reimbursement). Consistent with the foregoing findings in respect of Legal Costs, the Respondents are ordered to pay the Claimant GBP 31,171.24 in respect of Arbitration Costs.

4. **GENERAL**

4.1. The Sole Arbitrator records that he has taken note of, and considered all submissions put before him for the purpose of this Final Award. He has, in his assessment of the cases, positions and issues, referred in this Final Award to those matters he has considered specific to the explanation of his reasoning; however, all submissions were taken account of, whether expressly referred to or not, in the formulation and articulation of the reasons and conclusions herein.

5. **FINAL AWARD**

5.1 For the reasons set out above, the Sole Arbitrator holds, finds, grants and determines by way of Final Award:

***A. The Respondents are declared to jointly and severally owe and be liable to the Claimant for the costs of this arbitration being GBP 233,260.50 in respect of Legal Costs and GBP 31,171.24 in respect of Arbitration Costs, namely, a total of GBP 264,431.74.***

***B. The Respondents are hereby required, by way of award, to pay the Claimant GBP 264,431.74 within 14 days of today's date.***

***C. All other extant prayers for relief are denied and the arbitration is concluded.***

Date: 19 October 2021

Seat of Arbitration: London, England

Signed: _____
Klaus Reichert SC
Sole Arbitrator